UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANDREW HOFFMAN,

                Plaintiff,                            06-CV-1947 (SJF) (AKT)

    -against-                                 **OPINION & ORDER**
                                                          On Defendants' Motion to
                                                          Dismiss & Plaintiff's Motion
                                                           to Amend

NASSAU COUNTY POLICE DEPARTMENT,
OFFICER EILEEN RYAN, FIRST DEPARTMENT,
SHIELD NUMBER 1829; OFFICER DUANE
SEABROOKS, NASSAU COUNTY HIGHWAY
PATROL, SHIELD NUMBER 1846; OFFICER NOEL
CLIFFORD, SHIELD NUMBER 432, FIRST PRECINCT;
LIEUTENANT DANIEL JAY GALLAGHER,
JOHN DOES,

                Defendants.
------------------------------------------------------------X

FEUERSTEIN, J.

I.    INTRODUCTION

      Plaintiff Andrew Hoffman commenced this action on April 27, 2006, alleging various federal constitutional and state law tort claims against Defendant Nassau County Police Department ("Police Department") and individual defendants Officer Eileen Ryan ("Defendant Ryan", "Officer Ryan" or "Ryan"), Officer Duane Seabrooks ("Defendant Seabrooks", "Officer Seabrooks" or "Seabrooks"), Officer Noel Clifford ("Defendant Clifford", "Officer Clifford" or "Clifford"), and Lieutenant Daniel Jay Gallagher ("Defendant Gallagher", "Lieutenant Gallagher" or "Gallagher") (collectively, "Defendant Officers" or "Officers"), arising out of Plaintiff's June 27, 1998 arrest. Defendant Officers move pursuant to Federal rule of Civil Procedure 12(c) to dismiss Plaintiff's Complaint. (See Defs.' Notice of Mot. Dismiss (doc.

1

#23).)

Plaintiff moves to amend his Amended Complaint to name the County of Nassau as a defendant.[1]

For the reasons set forth below, the Defendant Officers' Motion to Dismiss is GRANTED and Plaintiff's Motion to Amend is DENIED.

II. THE FACTS[2]

A. *The Events of June 27, 1998*

Plaintiff Andrew Hoffman is a Caucasian male.[3] In 1975, he suffered a fractured skull and brain injury for which he has continued to require medication. (See Am. Compl., ¶ 139.) In 1998, Plaintiff was an accounting student at SUNY Old Westbury University (see id. ¶ 79), residing in East Meadow, New York (see id. ¶ 5).

At 3:30 a.m. on June 27, 1998, Plaintiff left his house to pick up a friend. (See id. ¶ 9.) While returning home on North Jerusalem Road, Plaintiff noticed a police car approaching from the opposite direction. (See id. ¶ 14.) With his friend in the car, Plaintiff continued on North Jerusalem Road until he reached the intersection of Bellmore Avenue and North Jerusalem Avenue, where he stopped at the red traffic light and activated his right-turn directional signal. (See id.) While waiting

---

[1] Plaintiff amended his original Complaint on May 23, 2006. (See Am. Compl. (doc. #2).)

[2] Except as noted, the facts are taken from Plaintiff's Complaint, assumed to be true, and all reasonable inferences are drawn in Plaintiff's favor. See ATSI Commn's Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

[3] Although not stated in Plaintiff's Amended Complaint, Plaintiff does not dispute this assertion. (See Defs.' Mem. Supp. Mot. Dismiss at 11 (doc. #24).)

for the light to turn green, Plaintiff noticed a police car behind him. (See id. ¶ 15.)

When the light turned green, Plaintiff turned right onto Bellmore Avenue as did the police car. (See id. ¶ 16.) Plaintiff continued on Bellmore Avenue following the road as it merged into Merrick Avenue. (See id. ¶ 17.) As Plaintiff approached Cedar Drive, he signaled a right turn. (See id. ¶ 18.) As Plaintiff proceeded to make a right turn onto Cedar Drive, the overhead lights of the police car were activated. (See id.) Plaintiff continued down Cedar Drive, stopping for the stop sign at the intersection of Cedar Drive and Cedar Lane. (See id. ¶ 19.) As indicated by his directional signal, Plaintiff turned left onto Cedar Lane. (See id.) With the police car following, Plaintiff continued driving to the corner of Cedar Lane and Apple Lane and stopped at the right-side curb. (See id. ¶¶ 21, 22.)

Plaintiff waited for three (3) minutes for the police officer to approach his vehicle. (See id. ¶ 23.) The police officer did not approach Plaintiff's car. (See id. ¶¶ 24, 25.) Therefore, Plaintiff drove on, turned the corner and parked his car in front of his house. (See id. ¶ 25.) Plaintiff exited his car and ran to the front door of his house. (See id. ¶ 26.) As he was putting his key in the door lock, Defendant Ryan grabbed Plaintiff and ordered him to remove his key from the door. (See id.) Defendant Ryan asked Plaintiff why he ran to the door. (See id.) Plaintiff responded that he saw Defendant Ryan following him, he knew he had done nothing wrong, and he waited for Defendant Ryan to approach his car, but she did not. (See id. ¶ 27.) Plaintiff also told Defendant Ryan that he wanted his mother to be a witness to what was now transpiring as he had recently been falsely arrested by officers of Defendant Ryan's precinct and charged with crimes he did not commit, which were dismissed for lack of evidence. (See id. ¶ 28.)

3

Plaintiff removed his key from the door lock and began to frantically ring the door bell. Simultaneously, Defendant Ryan radioed for back-up assistance. (See id. ¶ 29.) Defendant Gallagher, a lieutenant with the Nassau County Police Department, arrived at the scene shortly thereafter. (See id. ¶¶ 7, 32.) While Plaintiff and Defendant Gallagher were standing in Plaintiff's driveway, Defendant Ryan and Plaintiff's mother walked to Defendant Ryan's police car; at the car Ryan explained to Plaintiff's mother that she, Ryan, had responded to a DWI call that had identified Plaintiff's car, but that Plaintiff had not done anything wrong. (See id. ¶¶ 33, 35.)

A third police officer, Defendant Seabrooks, came up behind Plaintiff and grabbed Plaintiff's neck, pushed him down to the ground and laid on top of him. (See id. ¶ 36.) Plaintiff shouted to Defendant Seabrooks to "get off" him to which Seabrooks responded that he wanted to conduct a field sobriety test on Plaintiff. (See id. ¶¶ 37, 38.) Plaintiff told Seabrook that he had not had a drink in over seven (7) years and agreed to take the test. (See id. ¶ 39.) Plaintiff was then allowed to stand and took the field sobriety test. (See id. ¶¶ 40, 41.)

While the test was being administered, Plaintiff's mother was told to go inside her home or that she would be arrested. (See id. ¶ 43.) Although an Officer pushed Plaintiff's mother towards the home, "she remained outside as a witness to the events as they unfolded." (Id. ¶ 44.)

Having passed the field sobriety test, one of the Defendant Officers told Plaintiff, "We want to bring you in for a breathalyzer test." (Id. ¶ 45.) Plaintiff responded that he did not want the Officers to bring him anywhere, but that he would be willing to take such a test if it was brought to his house. (See id. ¶ 46.) Defendant Gallagher told him that if he passed the portable breathalyzer test, the Officers would leave him alone. (See id. ¶ 48.) In response to a radio request, Defendant Clifford arrived at Plaintiff's house with a portable breathalyzer test and administered the test in

4

Plaintiff's driveway. (See id. ¶¶ 50, 51.) The machine registered "zero alcohol". (Id. ¶ 52.)

Defendant Officers then asked Plaintiff to walk up to the sidewalk and then told him to place his hands behind his back. (See id. ¶¶ 53, 54.) Plaintiff responded, "You told me that you would leave me alone if I passed the test." (Id. ¶ 55.) The Defendant Officers again instructed Plaintiff to place his hands behind his back. (See id. ¶ 56.) Plaintiff complied and was handcuffed. (See id.) Plaintiff was arrested at 4:14 a.m. on June 27, 1998 and placed in Defendant Ryan's police car. (See id. ¶¶ 58, 62.) Plaintiff was not given Miranda warnings, informed that he was "under arrest" (see id. ¶ 59.), or given a summons for any moving violation. (See id. ¶ 93.)

From the back of Defendant Ryan's police car, Plaintiff observed Defendant Seabrooks searching his car. (See id. ¶ 62.) Defendant Seabrook told Plaintiff's mother that he was looking for guns, drugs, and alcohol. (See id. ¶ 63.)

During the ride to the First Precinct, Plaintiff asked Defendant Ryan why he had been arrested. (See id. ¶ 65.) Her response was, "My supervising officer, Sergeant Gallagher, said I should bring you in. When we get to the station house, we will find out why." (Id.) Once at the precinct, Plaintiff remained in handcuffs while Defendant Ryan typed up the arrest report. (See id. ¶ 66.) While she was preparing her report, Ryan said to Plaintiff, "I could say that you pushed me." (Id. ¶ 68.) Plaintiff responded, "But, I never did." (Id.) Ryan retorted, "But, I can say that you did." (Id.) Defendant Ryan's arrest report alleged that Plaintiff had committed the crime of Obstructing Governmental Administration in violation of § 195.05 of New York Penal Law and Resisting Arrest under § 205.30 of the New York Penal Law. (See id. ¶ 69.) Plaintiff was arraigned later in the day. (See id. ¶ 70.) His mother posted bail and he was released into her custody. (See id. ¶¶ 72, 74.) In late September 1998, a superseding information was filed against Plaintiff, charging him with

5

Harassment in violation of § 240.26(1) of the New York Penal Law. (See id. ¶¶ 77, 78.)

B.  *Subsequent Legal Proceedings*

1.  The September 14–17, 1999 Trial

A trial was held in September 1999. (See id. ¶ 87.) Defendants Ryan and Clifford testified that the police had received an anonymous 911 call that the driver of a vehicle matching the description of Plaintiff's vehicle was intoxicated and that Plaintiff was never given a breathalyzer test. (See id. ¶ 90.) Defendant Ryan also testified that Plaintiff did not appear to be intoxicated: his breath did not smell of alcohol, his motor coordination appeared normal, his eyes were not glassy or bloodshot, and his speech was not slurred. (See id. ¶ 91.) Defendant Ryan further testified that she observed Plaintiff speeding and failing to signal. (See id. ¶ 92.)

Plaintiff, his mother, and his friend and passenger, Robert Hauswald, also testified. (See id. ¶¶ 99, 102.) Plaintiff testified that he was administered a field sobriety test (see id. ¶ 102.) and a portable breathalyzer test. (See id. ¶ 104.) Plaintiff also testified that after blowing into the breathalyzer device, an officer said "Zero". (Id.) Plaintiff testified that, in response, he stated, "Then, I'm okay." (Id.) Plaintiff's mother's testimony corroborated Plaintiff's testimony that he was administered a field sobriety test and a portable breathalyzer test. (See id. ¶¶ 102, 103.)

Robert Hauswald testified that Plaintiff had been cooperative with the Defendant Officers and did not resist being placed in handcuffs. (See id. ¶ 100.) Hauswald also testified that Plaintiff had not initiated any physical contact with the Defendant Officers, but that the Officers made physical contact with Plaintiff by pushing him in the back of his head. (See id. ¶¶ 100, 101.)

A jury acquitted Plaintiff on the charges of obstructing governmental administration and harassment, and convicted him on the charge of resisting arrest. (See id. ¶ 107.)

2. The Motion to Set Aside the Verdict

On December 10, 2001, Plaintiff moved in state court for an Order Setting Aside a Guilty Verdict pursuant to § 330.30 of N.Y.S. Criminal Procedure Law. (See id. ¶ 108.) On March 12, 2002, the judge issued a decision denying Plaintiff's motion. (See id. ¶ 110.) Plaintiff was sentenced to perform two hundred (200) hours of community service. (See id. ¶ 111.)

3. Plaintiff's Appeal of the Conviction

On March 27, 2002, Plaintiff filed a Notice of Appeal alleging ineffective assistance of counsel. (See id. ¶¶ 112, 113.) On March 23, 2004, Plaintiff's conviction was reversed and the matter remanded for a new trial. (See id. ¶ 114.)

4. Plaintiff's January 2005 Trial

Plaintiff's retrial commenced on January 4, 2005. (See id. ¶ 123.) Defendant Ryan testified that she had stopped Plaintiff because he had been speeding and failed to signal before making a turn (see id. ¶ 124), but acknowledged that a stop based on an anonymous tip was not valid (see id. ¶ 129) and that Plaintiff had passed the field sobriety test. (See id. ¶ 130.) There was also testimony that Plaintiff was not advised of his Miranda rights. (See id. ¶ 134.) On January 6, 2005, a jury acquitted Plaintiff of resisting arrest. (See id. ¶ 135.)

5. Damages

According to Plaintiff, he was diagnosed with depression after the 1999 trial (see id. ¶ 143) and had been scheduled to take the certified public accountant examination in November 1999 (see id. ¶ 138.), but withdrew due to stress he experienced as a result of his arrest and the subsequent court appearances. (See id. ¶ 142.) Plaintiff is currently receiving monthly disability payments as a result of this diagnosis. (See id. ¶ 144.)

III.  DEFENDANT OFFICERS' MOTION TO DISMISS

    A.  Standard of Review for a Motion to Dismiss

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Recently, the Supreme Court clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).[4] See Bell Atlantic Corporation v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (2007). The previous standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Conley v. Gibson, 355 U.S. 41, 45-46 (1957), was replaced to require that a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Id. at 1964-65 (citations and internal quotation marks omitted).

The Second Circuit has stated that Twombly does not require a universally heightened

---

[4] The Court notes that Defendants moved "pursuant to 12(c) of the Federal Rules of Civil Procedure." (Defs.' Notice of Mot. (doc. #23).) Rule 12(c) is entitled "Motion for Judgment on the Pleadings". Since "[a] motion for judgment on the pleadings pursuant to Rule 12(c) is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim," Worldhomecenter.com, Inc. v. L.D. Kichler Co., Inc., No. 05-cv-3297 (DRH)(ARL), 2007 WL 963206 (E.D.N.Y. March. 28, 2007)(citing Nicholas v. Goord, 430 F.3d 652, 658 n.8 (2d Cir. 2005)), the Court shall proceed as if Defendants moved pursuant to Rule 12(b)(6).

standard of fact pleading, but "instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). In other words, Twombly "'require[s] enough facts to 'nudge [a plaintiff's] claim across the line from conceivable to plausible.'" In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007)(quoting Twombly, 127 S. Ct. at 1974)).[5]

B. The Amended Complaint

The Plaintiff alleges four (4) claims of federal constitutional violations and three (3) claims of state law torts. The federal claims are: (1) a § 1985(3) claim of conspiracy to interfere with civil rights claim; (2) a § 1983 claim of failure to instruct and supervise; (3) a § 1983 claim of detention and confinement; and (4) a violation of due process. Plaintiff's state law tort claims are: (a) intentional infliction of emotional distress; (b) malicious prosecution; and (c) battery. (See Am. Compl. (doc. #2).)

1. Plaintiff's § 1985(3) Claim

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must assert:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

Armstrong v. Brookdale Univ. Hosp. & Med. Ctr., No. 98-cv-2416 (SJ), 2002 WL 13222, * 3 (Jan. 3, 2002 E.D.N.Y.) (citing Mian v. Donaldson, 7 F.3d 1085, 1087 (2d Cir. 1993) (further

---

[5] The Second Circuit has "declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases." ATSI Commn's Inc., 493 F.3d at 98 n.2.

9

citation omitted)); see also Schuler v. Bd. of Educ., Cent. Islip Union Free Sch. Dist., No. 96-cv-4702 (JG), 2000 WL 134346, *15 (E.D.N.Y. Feb. 1, 2000); Strong v. Montava, 64 F. Supp. 2d 101, 107 (E.D.N.Y. 1999).

Plaintiff's § 1985(3) claim fails because the alleged conspirators are employees of a single organization, the Nassau County Police Department and their alleged actions were taken in the course of their employment. "[I]t is well settled that there can be no actionable conspiracy under the civil laws if the alleged conspirators are employees of a single organization and their alleged actions were taken in the course of their employment." Armstrong, 2002 WL 13222, at *3 (citing Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66, 71 (2d Cir.), cert. denied, 425 U.S. 974 (1976)); see also Danielak v. City of New York, No. 02-cv-2349 (KAM), 2005 WL 2347095, *13-*14 (E.D.N.Y. Sept. 26, 2005) ("[T]he intra-corporate conspiracy doctrine bars plaintiff's conspiracy claims because all of the individual defendants were employees of the New York City Police Department, and were acting within the scope of their employment as police officers when they arrested plaintiff.").

Alternatively, Plaintiff's § 1985(3) cause of action fails because the Complaint does not allege some class-based discriminatory animus. See Mian, 7 F.3d at 1088 ("[T]he conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." (internal quotations and citation omitted)); Schuler, 2000 WL 134346, at *15. The Second Circuit has extended the protections of § 1985(3) to people with mental disabilities. See Schuler 2000 WL 134346, at *15 n.20 (citing People by Abrams v. 11 Cornwell Co., 695 F.2d 34, 42 (2d Cir. 1982), modified on other grounds, 718 F.2d 22 (1983)).

However, even assuming without deciding that Plaintiff's depression is a mental disability, he asserts he was diagnosed with depression after the September 1999 trial. (See Am. Compl., ¶ 143.) Plaintiff does not allege that he was mentally disabled on June 27, 1998. Furthermore, Plaintiff makes only a conclusory allegation that his diagnosis of depression is the result of the Defendant Officers' actions. (See Pl.'s Am. Compl., ¶ 144 ("Currently, Plaintiff is receiving monthly disability payments as a result of this depression. As [sic] a result of the unlawful, malicious prosecution by the Defendants.")[6] See, e.g., Schuler 2000 WL 134346, at *15 ("The vague and conclusory allegations relied upon by plaintiffs cannot suffice, especially in a claim predicated upon discrimination." (citing Temple of the Lost Sheep, Inc. v. Abrams, 930 F.2d 178, 195 (2d Cir.), cert. denied, 502 U.S. 866 (1991)). Since, Plaintiff's Complaint does not state a cause of action pursuant to § 1985(3), that claim is dismissed.

2.  Plaintiff's § 1983 Causes of Action

"Section 1983 itself creates no substantive rights; it only provides a procedure for redress for the deprivation of rights established elsewhere." Caracciola v. City of New York, No. 95-cv-3896 (CSH), 1999 WL 144481, *4 (S.D.N.Y. Mar. 17, 1999) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)). Further, it does not contain a statute of limitations; therefore, applicable state law determines the limitations period for a § 1983 cause of action. See Geslak v.

---

[6] Plaintiff's assertions in his Opposition Memorandum (see Pl.'s Opp'n Mem. at 4.) attempt to circumvent the clear law of this Circuit that a court is restricted to considering the facts presented in a plaintiff's complaint when deciding a motion to dismiss. See, e.g., Dangler v. N.Y. City Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir. 1999) ("In ruling on [a motion for dismissal], the court is to look only to the allegations of the complaint and any documents attached to or incorporated by reference in the complaint to assume all well-pleaded factual allegations to be true, . . . .") (internal citations omitted); Serby v. Town of Hempstead, No. 04-cv-901 (DRH)(MLO), 2006 WL 2795234 (E.D.N.Y. Sept. 26, 2006) (same).

Suffolk County, No. 06-cv-251, 2007 WL 4591252, *5 (E.D.N.Y. Dec. 27, 2007) (citing Fiesel v. Bd. of Educ. of City of N.Y., 675 F.2d 522, 524 (2d Cir. 1982), partially vacated on other grounds on recons., 2008 WL 620732 (E.D.N.Y. Mar. 5, 2008). "The appropriate statute of limitations for § 1983 actions brought in New York is three years from the date 'the plaintiff knows or has reason to know of the injury that is the basis of the action.'" Id. (quoting Pauk v. Bd. of Trustees of the City Univ. of N.Y., 654 F.2d 856, 859, 861 (2d Cir. 1981)); see also Perez v. County of Nassau, 294 F. Supp. 2d 386, 389 (E.D.N.Y. 2003). Further, the Supreme Court has recently articulated that "the accrual date of a §1983 cause of action is a question of federal law that is *not* resolved by reference to state law." Wallace v. Kato, ___ U.S. ___, 127 S. Ct. 1091, 1095 (2007) (emphasis in original). "A claim begins to accrue 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" McCloud v. Cutler, No. 06-cv-5442 (RJD)(LB), 2008 WL 906701 (E.D.N.Y. Apr. 3, 2008) (quoting Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997) (further citation omitted)).

In his first § 1983 claim, Plaintiff alleges that Defendant Gallagher "[a]cting under color of law and pursuant to official policy or custom . . . knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendant police officers in their duties . . ." (Am. Compl., ¶ 153.) Drawing all inferences in Plaintiff's favor, Plaintiff knew or should have know of his claim of negligent supervision on June 27, 1998, the date of his arrest, and the date when his claim accrued. Even assuming, arguendo, that Plaintiff did not know of his negligent supervision claim until his 1999 trial (where he was acquitted of the obstruction and harassment charges), this claim is still time-barred as Plaintiff did not commence this action until April 27, 2006, more than three years from these events.

In any event, Plaintiff has not provided any factual allegations that would support this claim. See, e.g., ATSI Commn's Inc., 493 F.3d at 98 (instructing courts to "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor"). Rather, Plaintiff provides a formulaic recitation of the relevant Monell elements to support his negligent supervision claim. See, e.g., City of Canton v. Harris, 489 U.S. 378, 394-95 (1989) (O'Connor, J., concurring in part and dissenting in part) ("Where . . . a claim of municipal liability is predicated upon a failure to act, the requisite degree of fault must be shown by proof of background events and circumstances which establish that the 'policy of inaction' is the functional equivalent of a decision by the city itself to violate the Constitution."); see also Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) (providing Monell's policy or custom requirement).

As to Plaintiff's § 1983 claim of unlawful detention and confinement, they are considered together as false imprisonment. See Wallace, 127 S. Ct. at 1095.

> The running of the statute of limitations on false imprisonment is subject to a distinctive rule–dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned: "Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends." 2 H. Wood, Limitation on Actions § 187d(4), p. 878 (4th rev. ed. 1916). Thus, to determine the beginning of the limitations period in this case, we must determine when petitioner's false imprisonment came to an end. Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process–when, for example, he is bound over by a magistrate or arraigned on charges.

Id. at 1095-96 (further internal citations omitted)(emphasis in original).

Although Plaintiff does not provide the date of his arraignment,"[i]t is safe to assume that Plaintiff's arraignment took place at some point between June 27, 1998 and September 14, 1999 [the commencement date of Plaintiff's first trial]." (Defs.' Reply Mem. at 2 (doc. #26).) Therefore, "[l]egal process was initiated against Plaintiff no later than 1999." (Id.) Under this generous assumption, the three-year limitations began to run in 1999 and expires in 2002. Since Plaintiff did not commence his § 1983 false imprisonment cause of action until April 27, 2006, it is time-barred and dismissed.

3.  Plaintiff's Claims of Violation of Due Process

In his Fourth Cause of Action, Plaintiff alleges that his arrest violated his Fourteenth Amendment rights. (See Am. Compl., ¶ 160-161 ("[T]he actions of the Defendants, resulted in the Plaintiff being deprived of his freedom of movement . . .").) However, a constitutional claim alleging deprivation of liberty "must be examined under Fourth Amendment standards, not due process standards under the Fifth and Fourteenth Amendments." Caracciola, 1999 WL 144481, at *4 (citing Albright v. Oliver, 510 U.S. 266 (1994) (plural opinions agreeing that Fourth Amendment provides source for a § 1983 claim premised on a person's arrest); Singer v. Fulton County Sheriff, 63 F.3d 110, 115-16 (2d Cir. 1995)). Accordingly, "Plaintiff's . . . Fourteenth Amendment claim[] must be dismissed because the fourth amendment, and not substantive due process, provides the constitutional home for false arrest claims." Frazier v. Woods, No. 96-cv-7813 (JFK), 1998 WL 146231, *3 (S.D.N.Y. Mar. 25, 1998).

Plaintiff's also claims a due process violation based upon the search and seizure by Defendant Seabrook of Plaintiff's car on June 27, 1998. (See Am. Compl., ¶ 162.) Since (1) "[§] 1983 provides a civil claim for damages against any person who, acting under color of state

law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States," Caracciola, 1999 WL 144481, at *4, and (2) Plaintiff seeks damages for this alleged deprivation, the Court will consider this claim as seeking to allege a § 1983 violation. However, a § 1983 action must be commenced within three years of accrual. (See supra Part III.B.2.) Plaintiff knew or should have known of this unreasonable search claim as of June 27, 1998, but on April 27, 2006, more than four (4) years after the expiration of the limitations period, Plaintiff commenced this action. Hence, the Defendants are entitled to the dismissal of this claim as well.

        4.        Plaintiff's State Law Tort Claims

Plaintiff alleges state law tort claims of (a) intentional infliction of emotional distress, (b) malicious prosecution, and (c) battery. "The decision whether to exercise supplemental jurisdiction is left to the discretion of the district court." Brierly v. Deer Park Union Free Sch. Dist., 359 F. Supp. 2d 275, 302 (E.D.N.Y. 2005) (citing Ametex Fabrics, Inc. v. Just in Materials, Inc., 140 F.3d 101, 105 (2d Cir. 1998)), aff'd, 240 Fed. Appx. 887, 888 (2d Cir. 2007); see also Serby, 2006 WL 2853869, at *15; 28 U.S.C. § 1367(c)(3) (recognizing courts have discretion to decline exercising jurisdiction they have dismissed all claims over which they had original jurisdiction); 28 U.S.C. § 1367(a) (". . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case of controversy . . ."). Having dismissed all of Plaintiff's claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

IV.  PLAINTIFF'S MOTION TO AMEND

    A.    <u>Standard of Review for a Motion to Amend</u>

It is well-settled that motions to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); see also <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 330 (1971). It is also settled law that "[t]he decision to grant or deny a request to amend is within the discretion of the district court." <u>Sanrio Co., Ltd. v. Epic Trading, Inc.</u>, No. 04-cv-5428 (NG)(MDG), 2005 WL 1705746, *1 (E.D.N.Y. July 21, 2005)(Go, M.J.) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>John Hancock Mut. Life Inc. Co. v. Amerford Int'l Corp.</u>, 22 F.3d 458, 462 (2d Cir. 1994)). This discretionary denial, however, must be based on good cause, such as futility. See <u>Chill v. General Elec. Co.</u>, 101 F.3d 263, 272 (2d Cir. 1996); <u>Acito v. IMCERA Group, Inc.</u>, 47 F.3d 47, 55 (2d Cir. 1995).

    B.    <u>The Instant Case</u>

The Plaintiff concedes that he improperly named the Police Department as a defendant in his opposition papers and, therefore, seeks to amend his Complaint. (<u>See</u> Pl.'s Mem. Opp'n Mot. Dismiss at 6 (doc. #25) ("[T]he defendants are correct that the Nassau County Police Department is not the proper defendant as it is only an administrative arm of the County of Nassau without a separate legal identity.").)

He now moves to amend his Complaint "to correct an error in the complaint and name Nassau County as the proper defendant." (Pl.'s Mot. Am. at 2 (doc. #32).) Granting Plaintiff's motion would be futile.

1. Plaintiff's § 1985(3) Claim

Plaintiff cannot overcome the intra-conspiracy bar to his § 1985(3) claim. See Danielak, 2005 WL 2347095, at *13-*14; Armstrong, 2002 WL 13222, at *3. It is clear that all the individual Defendant Officers were employees of the Nassau County Police Department and that they were acting within the scope of their employment as police officers when they arrested Plaintiff. There is no evidence that at the time of Plaintiff's June 27, 1998 arrest, that Plaintiff, much less Defendants, knew that he was mentally disabled. Therefore, Plaintiff cannot establish that any conduct by the Defendant Officers was motivated by some discriminatory animus towards those with mental disabilities. Hence, as to Plaintiff's § 1985(b) cause of action, an amendment would be futile.

2. Plaintiff's § 1983 Causes of Action

Amendment of his Complaint to name the proper sueable entity, i.e., Nassau County, as to Plaintiff's claims of negligent supervision and false imprisonment is also futile as these claims are clearly time-barred. (See supra Part III.B.2.)

3. Plaintiff's Claims of Violation of Due Process

Plaintiff's claims of false arrest and violation of due process were dismissed as time-barred. (See supra Part III.B.3.) Therefore, it would be futile to allow Plaintiff to amend his Complaint to plead these claims against Nassau County.

4. Plaintiff's State Law Tort Claims

Since it would be futile to allow Plaintiff to amend his federal claims, no purpose would be served in granting Plaintiff's Motion to Amend as to his state law tort claims.

IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is GRANTED. Conversely, Plaintiff's Motion to Amend is DENIED. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

                                          __/s/ Sandra J. Feuerstein__
                                          SANDRA J. FEUERSTEIN
                                          United States District Judge

Dated: April 30, 2008
Central Islip, NY

Copies to:

Diane C. Petillo, Esq.
Law Office of Anthony J. Colleluori & Associated, LLC
180 Froehlich Farm Blvd.
Woodbury, NY 11797

Joseph Anci, Esq.
Office of the Nassau County Attorney
One West Street
Mineola, NY 11501